

**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
(215) 686-8000

LAWRENCE S. KRASNER
DISTRICT ATTORNEY

March 20, 2019

Honorable Edward D. Smith
United States District Court Judge
United States District Court, Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 4000
Philadelphia, PA 19106-1750

      RE: **Jermont Cox v. Martin Horn, et al.**, Civil Action No. 00-5188

Dear Judge Smith:

Enclosed please find a copy of the Commonwealth's Response to Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e), which has been filed with the Clerk.

                                      Respectfully Submitted,

                                      Max C. Kaufman
                                      Supervisor, Federal Litigation Unit

Enclosure

cc:   Stuart B. Lev, Esquire
       Loren D. Stewart, Esquire
       Jahaan Shaheed, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERMONT COX**<br>**Petitioner** | : | **CIVIL ACTION** |
| v. | : | |
| **MARTIN HORN, et al.**<br>**Respondents** | : | **NO. 00-5188** |

## RESPONSE TO MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO F.R.C.P. 59(e)

The Commonwealth respectfully requests that this Court deny petitioner's motion to alter or amend the judgment denying his motions under F.R.C.P. 60(b)(6).

### BACKGROUND

Petitioner is a Pennsylvania state prisoner who was convicted of first-degree murder and sentenced to life imprisonment in 1993 for the fatal shooting of Lawrence Davis.[1] Petitioner was convicted in a non-jury trial before the Honorable Carolyn Engel Temin of the Philadelphia Court of Common Pleas.[2]

Petitioner filed a petition for a writ of habeas corpus in federal court in 2000. Magistrate Judge Jacob Hart recommended that the petition should be denied because

---

[1] In addition to the first-degree murder in this case, petitioner was also convicted of two other first-degree murders: the murders of Roosevelt Watson and Terrance Stewart. Petitioner was sentenced to life imprisonment for the Watson murder, and he was sentenced to death for the Stewart murder. His federal habeas petition in the Watson case is docketed at 00-5289. His federal habeas petition in the Stewart case is docketed at 10-2673. These habeas cases are likewise pending before this Court.

[2] Judge Temin is currently a First Assistant District Attorney of the Philadelphia District Attorney's Office. Pursuant to Rule 1.12(c)(2) of the Pennsylvania Rules of Professional Conduct, First Assistant District Attorney Temin has been screened from any participation in this case.

1

all but one of petitioner's claims were defaulted, and his only non-defaulted claim was meritless. The Honorable Anita Brody approved and adopted the report and recommendation and denied petitioner's habeas petition. The Third Circuit affirmed the denial.

Over six years later, on June 20, 2012, petitioner filed a motion for relief from the judgment denying his habeas petition pursuant to F.R.C.P. 60(b)(6). His Rule 60(b)(6) motion was based on Martinez v. Ryan, 566 U.S. 1 (2012). Judge Brody denied the motion, and petitioner appealed.

On August 5, 2013, while petitioner's appeal of the denial of his initial Rule 60(b)(6) motion was still pending in the Third Circuit, petitioner filed a second Rule 60(b)(6) motion. This motion was premised on a new ballistics report by the police, which concluded that the two bullets recovered from the victim's body were not fired from the same gun. The case was subsequently reassigned from Judge Brody to this Court.

On August 7, 2014, the Third Circuit vacated the denial of petitioner's first Rule 60(b)(6) motion, and remanded for further proceedings.

On August 28, 2018, this Court denied petitioner's two Rule 60(b)(6) motions. Thereafter, on September 25, 2018, petitioner filed a motion to alter or amend this judgment pursuant to Rule 59(e).

## ARGUMENT

## PETITIONER IS NOT ENTITLED TO THE EXTREMELY LIMITED AND EXTRAORDINARY REMEDY OF RECONSIDERATION

Petitioner's motion to alter or amend this Court's judgment denying his Rule 60(b)(6) motions should be denied. "The scope of a motion for reconsideration . . . is extremely limited." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). "Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Martinez v. Skirmish, 2009 WL 2431339 at *1 (E.D. Pa. 2009) (quotation marks and citation omitted). Motions for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." Blystone, 664 F.3d at 415. "A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam). "To demonstrate clear error or manifest injustice, there must be a 'definite and firm conviction that a mistake has been committed.'" Buxton v. Hill, 2016 WL 4269870 at *1 (W.D. Pa. 2016) (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001)). "A motion for reconsideration is not an opportunity for an unsuccessful party to rehash arguments previously considered by the Court." Martinez, 2009 WL 2431339 at *2. None of the three limited grounds for reconsideration is implicated here.

A.  **Workman did not change the substantiality requirement of Martinez**

Petitioner contends that in "Workman v. Superintendent Albion SCI, No. 16-1969, --F.3d --, 2018 WL 4324238 (3d Cir. Sept. 11, 2018), . . . the Third Circuit for the first

3

time defined 'substantial' as that term relates to the excusal of the procedural default of claim [sic] of ineffective assistance of trial counsel" under Martinez (Doc. No. 115 at 3).[3] In fact, the Third Circuit in Workman merely repeated the same definition of "substantial" that it had endorsed in numerous prior opinions.

In Martinez, the Supreme Court recognized a "narrow exception" to the rule that "an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 566 U.S. at 9. Specifically, Martinez held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. The Supreme Court emphasized, however, that "[t]o overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 14.

In Workman, the Third Circuit duly noted that "substantial" means "some merit." In addition, the Workman Court stated that in order for a petitioner to show that a defaulted ineffective assistance of counsel claim has "some merit," he must satisfy the standard for granting a certificate of appealability:

> To excuse procedural default on an ineffective assistance of
> trial counsel claim under Martinez, that claim must be

---

[3] The opinion in Workman cited by petitioner was subsequently vacated by the Third Circuit on October 30, 2018. Workman v. Superintendent Albion SCI, 907 F.3d 741 (3d Cir. 2018). The Third Circuit then issued a second version of the opinion on November 15, 2018. Workman v. Superintendent Albion SCI, 908 F.3d 896 (3d Cir. 2018). However, this opinion too was subsequently vacated on February 6, 2019. The third and final version of the Workman decision was filed on February 12, 2019. Workman v. Superintendent Albion SCI, 915 F.3d 928 (3d Cir. 2019). The Third Circuit's definition of the Martinez substantiality requirement remained the same through the three iterations of the Workman opinion.

4

> substantial – it must have "some merit." . . . Miller-El v.
> Cockrell,[123 S.Ct. 1029 (2003)] the case on which the
> Supreme Court based its description of what a "substantial
> claim" entails, concerns the standards for issuing a
> certificate of appealability. To demonstrate that his claim
> has some merit, a petitioner must "show that reasonable
> jurists could debate whether (or, for that matter, agree that)
> the petition should have been resolved in a different manner
> or that the issues presented were adequate to deserve
> encouragement to proceed further."

915 F.3d at 937-938.

In so holding, Workman merely reiterated what the Third Circuit had repeatedly held in multiple prior decisions dating back to 2012, including its decision in this very case in 2014. See Jones v. Pennsylvania Board of Probation and Parole, 492 Fed. Appx. 242, 244-245 (3d Cir. 2012) ("the prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. . . . With respect to what constitutes a 'substantial' claim, the Court [in Martinez] suggested, by citing Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue), that courts should apply the standard for issuance of certificates of appealability") (quotation marks and citation omitted); Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014) (holding that third condition for applying Martinez is that "the underlying claim of trial counsel ineffectiveness is 'substantial,' meaning 'the claim has some merit,' analogous to the substantiality requirement for a certificate of appealability"); Bey v. Superintendent Greene SCI, 856 F.3d 230, 238 (3d Cir. 2017) ("In Martinez, the Court relied upon Miller–El v. Cockerell, . . . suggesting that we apply the standard for issuing certificates of appealibility in resolving the inquiry into what constitutes a 'substantial' claim. . . . Thus, whether a claim is 'substantial' is a

5

'threshold inquiry' that 'does not require full consideration of the factual or legal bases adduced in support of the claims'") (footnotes omitted); Preston v. Superintendent SCI, 902 F.3d 365, 377 (3d Cir. 2018) ("The final Cox requirement is met if Preston's IATC [ineffective assistance of trial counsel] claim is 'substantial,' meaning 'the claim has some merit,' analogous to the substantiality requirement for a certificate of appealability"); Richardson v. Superintendent Coal Township SCI, 905 F.3d 750, 763 (3d Cir. 2018) ("Under the final Cox prong, Richardson must show that his underlying claim of Hoey's ineffectiveness is 'substantial.' 757 F.3d at 119 (quoting Martinez, 566 U.S. at 14, 132 S.Ct. 1309). In other words, he must show that 'the claim has some merit,' as required for a certificate of appealability").

Thus, Workman neither "clarified" nor otherwise changed Third Circuit law regarding the substantiality requirement of Martinez (Doc. No. 115 at 5). Rather, Workman simply reaffirmed settled Third Circuit precedent. Workman is not an intervening change in controlling law warranting reconsideration under Rule 59(e).

### B.   This Court applied the correct standard for evaluating the merits of petitioner's defaulted ineffectiveness claims

Petitioner alleges that this Court "did not apply the correct standard" in assessing the merits of his underlying defaulted claims of trial counsel ineffectiveness under Martinez (Doc. No. 115 at 1). On the contrary, the Court correctly and repeatedly noted, in accordance with Martinez and its Third Circuit progeny, that an underlying defaulted claim of trial counsel ineffectiveness must be substantial in order for the default to be excused under Martinez. See Cox v. Horn, 2018 WL 4094963 at *6 (E.D. Pa. 2018) ("the Martinez exception to procedural default requires a 'substantial' underlying ineffective assistance of trial counsel ('IATC') claim"); id. at 12 ("the Martinez exception

6

to procedural default requires a 'substantial' underlying IATC claim"). The Court concluded that because petitioner's defaulted claims were entirely devoid of merit, they did not meet the substantiality threshold. See id. at 15 ("his defaulted IATC claims are not meritorious, let alone 'substantial'").

Petitioner complains that "[a]s to each of the five defaulted claims, the Court applied Strickland v. Washington, 466 U.S. 668 (1984)" (Doc. No. 115 at 4). There was nothing improper about the Court evaluating the substantiality of petitioner's defaulted claims of ineffective assistance of trial counsel by analyzing them under the Strickland standard. Indeed, that is precisely the approach endorsed by the Third Circuit.

In Preston, the Third Circuit ruled that "[i]n considering whether Preston's IATC claim is substantial, we are guided by the two-part Strickland analysis, but we remain mindful that the substantiality inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." 902 F.3d at 377 (quotation marks and citation omitted).

Moreover, in Bey, the Third Circuit prefaced its analysis of the substantiality of Bey's defaulted ineffectiveness claim by reiterating the two-part Strickland standard: "[t]o prove ineffective assistance of counsel under Strickland v. Washington, . . . a petitioner must prove (1) that his counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client, . . . i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 856 F.3d at 238 (footnotes omitted). The Bey Court then went on to "conclude that Bey's trial counsel's performance was deficient under Strickland[, and

7

that] Bey likewise establishes that he was prejudiced." Id. at 242. "Therefore," the Third Circuit "h[e]ld that Bey can show his underlying ineffective assistance of trial counsel claim is a substantial one under Martinez." Id. at 243. Thus, in Bey, like Preston, the Third Circuit squarely held that the substantiality inquiry under Martinez should be guided by Strickland.

Workman is not to the contrary. Workman merely emphasized that the standard for prevailing "on the merits" of a claim of ineffective assistance of trial counsel is "different" and more "exacting" than the standard for demonstrating the substantiality of the claim under Martinez. Workman, 915 F.3d at 938. Workman did not purport to sub silentio overrule Preston and Bey, and hold that a court considering whether a defaulted trial counsel ineffectiveness claim is substantial under Martinez may not evaluate the claim under the two-part Strickland standard. In fact, Workman cited Preston and Bey with approval. See 915 F.3d at 938 n.28, 939 n.31, 941 n.46, 943 n.57.

This Court correctly applied the Martinez substantiality requirement to petitioner's defaulted claims. There was certainly no manifest error of law supporting reconsideration.

### C. Petitioner's recycled claim of trial counsel ineffectiveness does not warrant reconsideration

Petitioner argues that this Court erred in concluding that his claim of ineffective assistance of trial counsel for failing to present an adequate defense was not substantial under Martinez. According to him, "[t]rial counsel's 'buckshot fever'[4] defense was not reasoned or reasonable" (Doc. No. 115 at 9). He is merely rehashing an argument that

---

[4] The phrase used at trial was "buck fever" (N.T. 10/28/93, 64-65).

8

has already been rejected by this Court, and that the Court correctly denied the first time.

Petitioner repeatedly assailed the reasonableness of counsel's buck fever theory in his supplemental memorandum in support of Rule 60(b) relief (Doc. No. 95 at 2 ["trial counsel relied upon an ill-conceived 'buckshot fever' defense"]; id. at 16 ["counsel proceeded with an irrational 'theory' that Mr. Cox had 'buckshot fever'"]). And this Court directly rejected the argument. See Cox, 2018 WL 4094963 at *15 ("The court sees this IATC claim differently"). Simply recycling an argument already considered and rejected by the Court presents no basis for the extraordinary remedy of reconsideration. See Martinez, 2009 WL 2431339 at *2.

Moreover, there was nothing erroneous about the Court's determination that counsel was not deficient. As the Court correctly noted, "Cox's inculpatory admission that he shot twice left him without winning options." Cox, 2018 WL 4094963 at *15. "[T]he buckshot fever theory provided a tidy explanation for how Cox could have fired two or more shots without the intent to kill." Id. The mere fact that this theory may not have succeeded, in the face of compelling evidence of petitioner's guilt, hardly means that counsel was ineffective for presenting it. See United States v. Cronic, 466 U.S. 648, 656 (1984) ("the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one"); Hill v. Wenerowicz, 2018 WL 580638 at *3 (E.D. Pa. 2018) ("a defense theory does not support an ineffective assistance of counsel claim merely because it fails").

### D. Petitioner's recycled claim of PCRA counsel ineffectiveness does not warrant reconsideration

9

Petitioner asserts that his "PCRA counsel's abandonment of this claim [that trial counsel presented an inadequate defense] was deficient" (Doc. No. 115 at 13). Here again, however, he is merely reiterating an allegation that he has already raised to this Court, and that the Court has already rejected. See Cox, 2018 WL 4094963 at *15. "A motion for reconsideration is not to be used as a vehicle for the losing party to rehash arguments already disposed of or as an attempt to relitigate a point of disagreement between the court and the litigant." Hockenberry v. Harry, 2014 WL 5761270 at *1 (M.D. Pa. 2014).

In any case, the Court's rejection of this issue was correct and should not be disturbed. The Court reasoned that because the inadequate defense claim and other underlying claims of trial counsel ineffectiveness were not substantial, "PCRA counsel was not deficient for abandoning those claims; nor did the abandonment prejudice Cox." Cox, 2018 WL 4094963 at *15. This ruling accorded with governing law. See Martinez, 556 U.S. at 14 ("To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"); Workman, 915 F.3d at 939 ("when a petitioner shows that post-conviction relief counsel's performance was unreasonably deficient, the requirement that the deficient performance result in prejudice may be satisfied with a substantial claim of ineffective assistance of trial counsel that would otherwise have been deemed defaulted") (quotation marks omitted).

### E. The Court correctly declined to reach the merits of petitioner's insubstantial trial counsel ineffectiveness claim

Petitioner argues that "the Court should turn to the merits of the IATC claim" alleging that counsel failed to present an adequate defense, and "alter or amend its opinion and grant habeas relief on this claim" (Doc. No. 115 at 12-13). But as this Court correctly concluded, this claim was not substantial under Martinez. See Cox, 2018 WL 4094963 at *15. Thus, it remained procedurally defaulted and could not give rise to habeas relief. See Howard v. Pitkins, 2018 WL 4495554 at *14 (E.D. Pa. 2018) (report and recommendation) ("As this underlying claim of ineffective assistance of trial counsel is not substantial, it remains procedurally defaulted and cannot give rise to habeas relief").

Petitioner insists that "[t]he parallels between [his] case and Workman are striking" (Doc. No. 115 at 15). To the contrary, Workman is readily distinguishable.

In Workman, trial counsel argued the theory "that because codefendant Moses shot Hunt first, the Commonwealth could not establish that Workman killed Hunt beyond a reasonable doubt." 915 F.3d at 934. However, the Commonwealth had presented expert testimony from Assistant Medical Examiner Edwin Lieberman that "indicated that the blood evidence revealed that Hunt was alive when he was shot in the chest by the ricocheted bullet fired by Workman." Id. at 943. In response to this testimony, trial counsel merely "argued that Lieberman possessed 'unmitigated gall.'" Id. "Trial counsel did not call an expert witness to rebut Lieberman's testimony, or call any fact witnesses." Id. "He utterly failed to contend with Lieberman's testimony that Moses's bullet hit Hunt first, but Hunt remained alive when Workman's bullet struck Hunt." Id. The Third Circuit concluded that "[a]ny objective standard of reasonableness requires counsel to understand facts and testimony and adapt to them, even at the expense of

11

purportedly clever theories. Workman's trial counsel appears to have misunderstood or willfully neglected this when faced with Lieberman's testimony." Id. at 944.

Here, on the other hand, the Commonwealth's ballistics expert, Officer John Finor, did not refute trial counsel's buck fever theory. In fact, the expert confirmed that he had "absolutely" heard of the phenomenon (N.T. 10/28/93, 64). In addition, Officer Finor acknowledged that buck fever could cause a shooter to engage in a variety of "strange and relatively unexplainable" behaviors including unwittingly firing more shots than the shooter was consciously aware of firing (Id. at 65). Thus, in contrast to Workman, this case is not one where trial counsel stubbornly and irrationally adhered to a defense theory that was absolutely foreclosed by the evidence. Unlike in Workman, trial counsel here did not persist with an impossible defense theory that had zero chance of persuading the factfinder. Workman is inapposite.

### F. The Court did not erroneously find that the murder weapon was a revolver

Petitioner claims that "[t]he Court [e]rroneously [r]elied on the [s]peculative [c]onclusion that the [m]urder [w]eapon [w]as a [r]evolver" (Doc. No. 115 at 14). He mischaracterizes the Court's opinion.

This Court did not conclusively find that petitioner used a revolver to murder the victim. Rather, the Court merely noted that it was likely that the murder weapon was a revolver. See Cox, 2018 WL 4094963 at *10 ("The ballistics expert also testified that these actions between each shot were especially necessary given the likelihood that the bullets recovered from Davis originated from a revolver"); id. at *2 n.3 ("the ballistics expert opined that the two recovered .38 special caliber bullets likely originated from a revolver").

In any event, any definitive finding that petitioner killed the victim with a revolver would have been correct. The two bullets recovered from the victim were both .38 special caliber, and the "vast majority of firearms in that caliber are revolvers" (N.T. 10/28/93, 54, 56). In addition, no fired cartridge casings were recovered from the murder scene (N.T. 10/27/93, 83; N.T. 10/28/93, 56). Petitioner maintains that "[t]he record is silent as to whether Officer Finor or any other officer went to the crime scene to search for fired cartridge casings" (Doc. No. 115 at 16). In fact, Detective Francis Miller testified that he searched the murder scene and did not discover any ballistics evidence (N.T. 10/27/93, 83). These circumstances – a bullet type that is almost always fired from a revolver, and the absence of fired cartridge casings at the crime scene – establish that the murder weapon was a revolver. See Commonwealth v. Hatcher, 2013 WL 11262133 at *5 (Pa. Super. 2013) ("Because no fired cartridge casings were found at the scene, police concluded that the shooter used a revolver instead of a semiautomatic weapon"). See also Commonwealth v. Moore, 2014 WL 10917039 at *1 n.4 (Pa. Super. 2014) ("the expert explained that unlike semi-automatic weapons, revolvers do not usually expel fired cartridge casings").

### G. The Court did not err in noting that petitioner hid the involvement of a second shooter

Petitioner alleges that the "[t]he Court [e]rroneously [f]ound that [he] '[h]id' the [i]nvolvement of the [s]econd [s]hooter" (Doc. No. 115 at 17). According to petitioner, "[t]he Court's conclusion is belied by [his] statements to the trial court during the post-sentence motion hearing[,]" and by the "*pro se* Petition for Allowance of Appeal that [he] filed in the Pennsylvania Supreme Court in 1995" (Id.). In fact, it is petitioner who has erred, by decontextualizing the language in this Court's opinion.

13

The full paragraph in which the Court referred to petitioner "hiding the full truth of the shooting" provided as follows:

> Fourth, to the extent the new ballistics report demonstrates that **Cox's statement** omitted a complete description of Davis's death, Cox alone is responsible for that omission, further undermining his attempt to paint the shooting as an accident. Cox was present at the time of Davis's shooting, and the medical examiner testified that all bullets entered from the same approximate angle. Cox would therefore know if somebody else fired shots. Nevertheless, he never suggested the involvement of a second shooter. Assuming the accuracy of the new report, the court is unwilling to find credible Cox's claims of accident thereby rewarding him for hiding the full truth of the shooting. And finally, Cox ignores the fact that the first ballistics report was merely inconclusive as to whether the bullets recovered from Davis originated from the same firearm. Thus, Cox's conviction was not necessarily premised upon him firing all shots, belying his argument that the new report is a game-changer that materially strengthens his assertion that he shot accidentally.

Cox, 2018 WL 4094963 at *11 (emphasis added).

Thus, it is clear from the context that when the Court wrote of petitioner "hiding" the involvement of a second shooter, the Court was referencing petitioner's omission of this information from his **police statement**, which indeed makes absolutely no mention of a second shooter (N.T. 10/27/93, 102-108). The Court was not asserting that petitioner continued to hide the possibility of an additional shooter following his conviction. The Court committed no error, much less a manifest error warranting the extraordinary remedy of reconsideration.

### H. The Court did not err in concluding that petitioner was not diligent in pursuing ballistics evidence

Finally, petitioner argues that "[t]he Court [e]rroneously [c]oncluded that [he] [d]id [n]ot [d]iligently [p]ursue the [b]allistics [e]vidence" because he "has repeatedly alleged

14

that his counsel – both at trial and on direct appeal – were ineffective for failing to investigate the ballistics" (Doc. No. 115 at 18). This argument is a non sequitur. Alleging that counsel was ineffective is not the same thing as seeking independent ballistics testing. In any case, the petitions for post-conviction relief and *pro se* petition for allowance of appeal cited by petitioner were filed long after his 1993 trial, and thus do not establish diligence.[5]

## CONCLUSION

For the foregoing reasons, the Commonwealth respectfully requests that petitioner's motion to alter or amend the judgment under F.R.C.P. 59(e) be denied.

Respectfully submitted,

MAX C. KAUFMAN
Supervisor, Federal Litigation Unit

---

[5] Petitioner also cites his testimony at the hearing on his post-sentence motion that "guys from the neighborhood was [sic] involved with the crime" (Id. at 17 [quoting N.T. 02/17/94, 16]). This vague testimony did not even allege that counsel was ineffective with respect to the ballistics, much less request independent ballistics testing.

15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMONT COX<br>**Petitioner** | : | CIVIL ACTION |
| v. | : | |
| MARTIN HORN, et al.<br>**Respondents** | : | NO. 00-5188 |

I, MAX C. KAUFMAN, hereby certify that on March 20, 2019, a copy of the foregoing pleading was served by placing same, first-class postage prepaid, in the United States mail addressed to:

>Stuart B. Lev, Esquire
>Loren D. Stewart, Esquire
>Jahaan Shaheed, Esquire
>Federal Community Defender Office
> for the Eastern District of Pennsylvania
>The Curtis Center, Suite 545 W
>Philadelphia, PA 19106
>(215) 928-0520

Max C. Kaufman
Supervisor, Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
(215) 686-5747